**NEWTON v. L. W. CULVER STORAGE & TRANSFER CO. et al.**

No. 11066.

Court of Civil Appeals of Texas. San Antonio.

Dec. 23, 1941.

Rehearing Denied Jan. 14, 1942.

Spears, Taylor & Spears, of San Antonio, for appellant.

Dodson, Ezell & Duke, of San Antonio, for appellees.

NORVELL, Justice.

This is an action for damages resulting from the alleged conversion of certain household furnishings, equipment and appliances which were stored by appellant, Elizabeth Newton, with the appellees, doing business as L. W. Culver Storage and Transfer Company. The property was sold by appellees at public sale under the provisions of the Uniform Warehouse Receipts Act, Articles 5612 to 5665, inclusive, Vernon's Ann.Civ.Stats.

The jury, in answer to special issues, found that:

(1) Appellees had not extended the time of payment of appellant's storage account until March 1, 1939, as alleged by her.

(2) A registered letter received by appellant on or about January 6, 1939, did contain a notice of the proposed sale of appellant's property to be held at public auction on February 15, 1939.

(3) That appellee's general manager had not sold appellant's property with the fraudulent intention of wrongfully depriving her of said property.

(4) That the sale of appellant's property on February 15, 1939, was conducted in good faith by the L. W. Culver Storage and Transfer Company.

(5) That the actual value to appellant on February 15, 1939, of the property sold upon said date was $1,350.

Judgment was entered upon the jury's findings that appellant take nothing.

Appellant presents her appeal upon three points. The jury findings are not directly attacked as being without support in the evidence, but appellant's position seems to be that the invalidity of the sale is shown as a matter of law by undisputed evidence, and consequently it was only necessary to submit to the jury an issue as to the value of the property.

Appellant contends that the sale was void because, (1) certain of appellant's goods and effects were sold in the containers in which they were placed at the time they were stored, and (2) a part owner of the storage company, without the consent of appellant, purchased a part of her property for an inadequate price at said sale. Appellant's third point combines the two preceding contentions as the basis for a conclusion that the sale is void and appellees, as a result, are to be regarded as trespassers ab initio and liable to appellant as such for the total value of all of appellant's property sold at said sale.

The following facts are conclusively established by the evidence and jury findings:

On February 22, 1938, appellant stored with appellees a number of boxes, crates and barrels containing various items of household furniture and personal effects for which she took non-negotiable warehouse receipts. Certain effects were removed by appellant, but at the time of the sale there remained in appellees' warehouse fifty-four containers of appellant's property.

Appellant failed to pay the storage charges which had accrued in the sum of $57.50, whereupon appellees, by registered mail and newspaper advertisement, gave notice of a proposed sale of appellant's property to be held on February 15, 1939. Said sale was conducted in appellees' sales room by an auctioneer in the presence of some thirty-five or forty persons who were

prospective purchasers. Some three hundred and forty-four pieces or containers of property and effects belonging to appellant as well as others were sold at the time. Appellant's properties were sold in the containers in which they had been stored and as described in the warehouse receipt. These containers were not broken into or opened prior to or at the time of the sale. The total amount realized from the sale of appellant's effects amounted to $33.10. Roland Smith, an appellee and part owner and manager of L. W. Culver Storage and Transfer Company, acting through an agent, bid in a part of appellant's property at the sale. One barrel purchased by him for $1.50 contained Haviland china, which had a value far in excess of the amount bid.

It also appears that E. C. Brown, an employee of appellees, had assisted appellant in packing the containers. This circumstance is relied upon by appellant in showing that the Company had notice of the value of the goods and effects stored by her. Concerning the extent of Brown's participation in the packing operations there is a conflict of testimony. According to Brown, his participation was limited to the packing of one barrel with glassware. The nature of the contents of the sealed barrels and boxes was not shown by the warehouse receipt. Smith denied that he had knowledge of the contents of said barrels and boxes at the time of the sale.

We are not here concerned with the exact wording of proper jury issues in a case of this nature, which involves a legal situation of bailor and bailee as well as one having some characteristics of trustee and cestui que trust. We are obliged to give full effect to the jury holding that the sale was not fraudulent, but, on the contrary, was conducted in good faith and upon proper notice.

■ Judged in the light of jury's finding, the price received for appellant's property at the sale in question was certainly inadequate, but it has been held that mere inadequacy of price alone is not a sufficient ground for setting aside a sale of the nature here involved. Thornton v. Goodman, Tex.Com.App., 216 S.W. 147; Reisenberg v. Hankins, Tex.Civ.App., 258 S.W. 904.

In addition to the inadequacy of price, we have, however, two additional circumstances which we next consider, namely, the fact that the containers were not opened and the contents thereof exposed to the public at the time of the sale, and the fact that the storage company was in effect a purchaser of a portion of the property sold.

The Uniform Warehouse Receipts Act directs that a foreclosure of the lien provided for in the Act may be had by means of "a sale of the goods by auction." Article 5644, Section 4, Vernon's Ann.Civ. Stats. It will be noted that said Article 5644 contains detailed directions as to the notice required for a proposed sale under the Act. The necessary contents of the notice are prescribed as well as the method of service upon the owner. Notice by advertisement in a newspaper is specifically required and details relating thereto are prescribed.

■ In contrast to the detailed instructions as to notice, the directions as to the conduct of the sale are meager. "A sale of the goods by auction" is all that is required by the statute. If these words be given their plain ordinary meaning it would seem that the statute was complied with in this particular. Furthermore, it seems to have been the legislative intention that the rights of the owner were to be afforded protection by the rather elaborate and detailed requirements as to notice.

Appellant contends that the wording of the statute in this particular must be construed with reference to the common law meaning of the term "sale by auction," Article 1, Vernon's Ann.Civ.Stats.

The cases of Stief v. Hart, 1 N.Y. 20, and Shimer v. Mosher, 39 Hun, N.Y., 153, are cited in support of appellant's argument. Neither authority, of course, deals with the particular kind of a sale here involved, but they are authority for the proposition that at common law sales of personal property under court process were void unless the property sold was within the view of the bidders at the sale.

Appellees cite the case of Scott v. A. Arnold & Sons Transfer & Storage Co., Inc., 273 Ky. 163, 116 S.W.2d 296, by the Kentucky Court of Appeals, which in certain particulars is in point. The sale there involved is a warehouseman's sale. The Kentucky statute in part provides that "the warehouseman may sell such property, or enough thereof to pay the charge, at *public auction,* at the warehouse or at the courthouse door of the county in which the warehouse is situated." Ky.St. § 4778.

As to the sale, the wording is similar to the Texas statute.

The Kentucky Court made a distinction between statutes providing for sales at "public auction" and those providing that goods shall be "exposed to sale," and held that a warehouseman's sale of goods in a locked chest was not void because the contents thereof were not exposed to the view of the buying public.

In construing the Texas statute, we must keep in mind the legal relationship of the parties, which is that of bailor and bailee.

■ Ordinarily a bailee, unless authorized by the bailor, is not empowered to break a sealed container and take the contents therefrom. It seems to us that had the Legislature intended that a warehouseman in selling property to satisfy his lien should, without the consent of the owner of stored property and in the absence of a demand from said owner that such be done, open sealed containers and display the contents thereof, it would have so provided in the Act which, as above pointed out, is rather detailed in many of its directions concerning sales conducted in accordance with its terms.

■ By the jury verdict, all questions of fraud, unfairness, bad faith, concealment and the like are removed from the case. In the absence of these elements, we can not say that the mere fact that the warehouseman failed to break open the containers involved and display the contents thereof, in the absence of a demand therefor, rendered the sale *void as a matter of law*.

■ We next consider the effect of Smith's purchasing certain of appellant's property at the sale.

There is authority in this country for the proposition that a mortgagee can not be a purchaser at a sale held by him. This is stated as the general rule by American Jurisprudence. 37 Am.Jur. 124, § 674.

There are, however, Texas authorities to the contrary. See Howard v. Davis, 6 Tex. 174; Goodgame v. Rushing, 35 Tex. 722, 723; Marsh v. Hubbard, 50 Tex. 203; Thornton v. Goodman, Tex.Com.App., 216 S.W. 147.

Appellant relies upon Uncle Sam's Loan Office v. Emery, 49 Tex.Civ.App. 236, 107 S.W. 1155, which contains certain expressions seemingly more in accord with the view that the mortgagee can not be a purchaser at his own sale than with the Texas authorities above cited. The holding of the case, as distinguished from certain expressions of opinion therein contained, can be reconciled with the above cited Texas authorities. In the Emery case the trial court found that the sale in question was not properly and fairly made. Undoubtedly the fact that the person selling the property at the sale was also a bidder (in fact, the only bidder) was a circumstance properly considered by the court in arriving at the conclusion that the sale was not fairly made.

In this case we have jury findings that the sale was not fraudulent but was fairly made. The jury evidently believed Smith's testimony that he had no knowledge of the contents of the containers when he made his purchase.

It seems that appellant by losing the verdict has lost her suit.

The judgment appealed from is affirmed.