**L. H. KOLBO et ux., Vera Street Kolbo, Appellants,**

**v.**

**A. N. BLAIR et ux., Lila Mae Blair, Appellees.**

No. 5.

Court of Civil Appeals of Texas.

Corpus Christi.

April 30, 1964.

Rehearing Denied May 28, 1964.

Second Motion for Rehearing Denied June 18, 1964.

Mrs. Vera Kolb, Davant & Fricke, Port Lavaca, for appellants.

Phillip Wilson, of Brady, Drake & Wilson, Dallas, for appellees.

NYE, Justice.

This is a suit to recover a deficiency judgment after a purported sale of mortgaged property under the powers given in a chattel mortgage.

The appellees, A. N. Blair and his wife, held a chattel mortgage on personal property belonging to the appellants L. H. Kolbo and his wife. They foreclosed and attempted to sell the property to themselves and credited the proceeds from the purported sale to the mortgage debt. Thereafter, they brought suit for the deficiency alleged to be due on the promissory note given to them as part of the purchase price for a tourist court and its furnishings. The trial of this case was to the court without the intervention of a jury. A deficiency judgment was rendered on behalf of the appellees. The trial court filed, as part of the record herein, findings of fact and conclusions of law supporting its judgment. The appellants assign as error the action of the trial court in rendering a deficiency judgment contending that the purported private foreclosure sale of the personal property was invalid, that there was no evidence that the sale was fairly conducted, and that there was insufficient evidence to show either a fair or valid sale of the personal property.

The facts are substantially undisputed and are as follows: In October of 1959, appellees sold a tourist court located in Corpus Christi, Texas, to the appellants. The consideration paid by the appellants was as fol-

lows: (1) the sum of $15,000.00 cash which the appellants obtained through a loan from Guaranty Title and Trust Company of Corpus Christi. This debt was secured by a first lien deed of trust mortgage on the tourist courts and a first lien chattel mortgage on the furniture and fixtures of the tourist courts; (2) the transfer and conveyance of certain real estate located in Dallas, Texas; and (3) the execution and delivery of a promissory note in the amount of $13,874.73 (the basis of this suit) which was secured by second lien deed of trust on the tourist court and a second lien chattel mortgage on the furniture and fixtures in the tourist courts. The first lien notes to the Guaranty Title and Trust Company and the second lien notes to the appellees were payable in monthly installments.

The operation of the tourist courts was never a success. Some nine or ten months after the purchase, the appellants sold the courts to a third party by the name of Watkins (not involved in this case) who assumed both notes but made no payment on either of them. Because of such default, appellees instructed their trustee to foreclose on their second lien deed of trust on the tourist courts. Pursuant to the appellees' instructions and after proper notice, the trustee sold the tourist courts in December of 1960 at public auction at the courthouse door. The appellees purchased the tourist courts for $7,500.00 subject to the first lien in favor of Guaranty Title and Trust Company, crediting the $7,500.00 on the second lien promissory note of the appellants. The appellants do not attack the validity of this sale which was held in accordance with the terms of the trust instrument.

Immediately following this sale by the trustee, the appellees made arrangements with the first lien holder, Guaranty Title and Trust Company, to forbear any action for several months on its first lien deed of trust and first lien chattel mortgage in order to give them an opportunity to attempt to work out the operations of the tourist courts. Following the making of these arrangements, the appellees took possession of the tourist courts and purported to conduct a private sale, either that afternoon in Corpus Christi, or the next day in Dallas, Texas. The record shows that no notice of the sale was given to the appellants or, in fact, to any prospective purchaser. The sale of the furniture and fixtures by the appellees' attorneys to themselves on behalf of the appellees was for the sum of $100.00 subject to the first lien of the Guaranty Title and Trust Company. The $100.00 was likewise credited to the promissory note. Shortly thereafter, the appellees brought this suit on the promissory note for the balance due and owing, plus interest and attorney fees. Judgment was entered in favor of the appellees in the amount of $7,207.00, together with interest at the rate of 6% (this being the amount of the second lien promissory note of $13,874.73, less payments made by the appellants during the time they were in possession of the tourist courts, less a credit of $7,500.00 from the sale of the reality at the trustee sale, less a credit of $100.00 being the sale price of the furniture and fixtures at the chattel mortgage sale, adding attorney fees based on the unpaid balance and accrued interest on the note). The appellants have perfected their appeal to this court.

The appellees claim that the sale was a valid one and was held in accordance with the power given them in the chattel mortgage. The pertinent part of the chattel mortgage giving appellees the power of foreclosure at private sale without notice, reads as follows:

"* * * on default, * * * said mortgagee, or the assigns, agent or representative of *said Mortgagee are hereby authorized at Mortgagee's option, to declare all said indebtedness due, and take actual possession of said property and to sell same at private sale without notice to mortgager* * * *.

(The mortgage instrument then authorized an alternate method of foreclosure and sale by public action)

\* \* \*. The said Mortgagee or assigns have power to receive money and make bills of sale of said property." (Emphasis supplied.)

 The appellees did not elect to seek judicial foreclosure by filing suit and sale as under execution. Such sales are presumed to be valid and fairly conducted. There, all the parties have notice, prospective purchasers have an opportunity to bid on the property, and the sale is conducted under the direction of the court. Nor did the appellees elect to foreclose and sell the mortgaged chattels at public auction, with published notice as authorized in the power given them in the subject mortgage instrument. Such a sale at public auction is a sale to the highest bidder—its object, a fair price—its means, competition—its results, a sale, presumed as a matter of law to be fairly conducted. In either of the foregoing type sales, a mortgagor attacking them has the burden of proving that the sale is invalid or that it was not fairly conducted. Here, the appellees elected to take actual possession and sell at private sale, without notice to the mortgagors, under the power given to them in the chattel mortgage instrument.

 The general rule is well-settled in this state to the effect that the power to sell mortgaged property to the satisfaction of the indebtedness secured by the mortgage must be executed in strict compliance with the terms upon which such power is granted. Any sale that is attempted to be made without a strict compliance with the terms of the instrument defining such power and the method of its execution is unauthorized. Michael v. Crawford, 108 Tex. 352, 193 S.W. 1070, Fireman's Fund Insurance Company v. Wilson, 284 S.W. 920 (Tex.Comm.App. Sec. A, 1926). This power of private sale does not eliminate the necessity of proving the existence of an actual sale nor does it relieve the mortgagee seeking to obtain a deficiency judgment from proving that the sale was fairly conducted.

The Court with its equity powers should scrutinize the private sale before rendering a deficiency judgment. This is so because the mortgagee, charged with conducting the private sale (sometimes without notice to the mortgagor as in this case), is generally in control of the facts.

While the statement of facts is somewhat lengthy, that evidence pertinent to the sale, and whether it was fairly conducted, was quite brief. Quoting from the testimony of the attorney representing the appellees and who purportedly conducted the sale:

"My notes are not real clear. It is my recollection that a sale of the personalty took place—I am not positive—a sale of this personalty took place subject to the first. *Whether or not it is something we did in Dallas or whether we did it there,* I have the vaguest recollection myself, and I could be mistaken, somewhat mimicking what McCulloch (the trustee at the trustee sale) had said about 'Gather around all those interested and bid upon.' The old man down in the corner said something to me about what sale or some comment but, be that as it may, *whether it occurred there or at Dallas,* a private sale was held, *no bids were made,* and no notice was given to the mortgagee—I should say mortgagor, and a $100.00 was bid by our firm on behalf of the Blairs and allowed against the debt. \* \* \* I don't know. I have the vaguest recollection of crying out there at the motel. *Mrs. Blair* (one of the appellees) *does not recall it and I can't look you in the eye and tell you I did it, because honestly I don't know, and there is nothing in here that says so.* \* \* \* *There was no notice whatsoever* to either of the Kolbos (the appellants) or *to any interested bidder.* \* \* \* She went into possession \* \* \* a subsequent sale of that personal property *either the afternoon of the 6th on the premises or the next day in Dallas when we got*

*around to drawing documents."* (Emphasis supplied.)

The trial court found that a private sale was held on or about the 6th day of December, 1960. We recognize the rule that the trial court's findings of fact will be upheld unless they are manifestly erroneous, and they will be overruled only when they are without any evidence of probative force to support them, or where they are so against the great weight and preponderance of the evidence as to be manifestly wrong. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97. And the further rule universally held by our courts in this state, that to test the sufficiency of the evidence to determine if it will support the trial court's findings, we must give credence only to the evidence and circumstances favorable to the findings and disregard all evidence and circumstances to the contrary. Banks v. Collins, supra; Stanley v. Stanley, 294 S. W.2d 132 (Tex.Civ.App.1956, writ ref. n. r. e.). All of the evidence concerning the sale came from the appellees' attorney who conducted the sale. The appellants knew nothing of the actual sale and could not supply any facts because they were not present. The attorney for the appellees testified that " * * * a private sale was held * * *." This testimony taken out of context and standing alone, would be sufficient to support the trial court's findings. However, the witness qualified such direct evidence of an actual sale, by limiting and qualifying his testimony in using such language as: I am not positive; I have the vaguest recollection; I could be mistaken; the old man said "what sale"; no bids asked, no bids made; I don't know; vaguest recollection of crying out; Mrs. Blair does not recall it; I can't look you in the eye and tell you I did it; honestly, I don't know; nothing in there that says so; and no notice to any interested bidder. We hold that such uncertain, indefinite and qualified testimony, when considered as a whole, on an issue so vital to appellants' rights, given as it was by the attorney who

was acting for appellees at the time in question, was insufficient for the trial court to base a finding that there was a valid sale of such personal property. Such finding is not supported by any evidence of probative force and is therefore manifestly erroneous.

The evidence is clear that the appellees took possession of the mortgaged property, but the evidence is insufficient that an actual sale took place. In order to pass title to the mortgaged property, a sale must actually take place. The taking alone is not sufficient to amount to a non-judicial foreclosure. The mortgagee exercising his right to sell must have due regard for the interest of the mortgagor in the property. He is not entitled to act as the owner of the property but assumes a fiduciary relationship not unlike that of a trustee for the benefit of the mortgagor. Lyon v. Wood, 363 S.W.2d 179 (Tex.Civ.App., 1962, n. w. h.). The reason for the rule being that the exercise of such power is a harsh remedy and that it can only be exercised by strictly complying with the terms and conditions imposed upon the power of sales by the maker of the mortgage instrument. Sullivan v. Hardin, 102 S.W.2d 1110 (Tex.Civ. App., 1937); Albright v. Smith, 288 S.W. 178 (Tex.Comm.App). Allbright v. Smith, 5 S.W.2d 970 (Tex.Comm.App.).

The appellees sought a deficiency judgment. Deficiency is that part of the secured obligation which remains after crediting it with the net proceeds accruing from a valid sale of the security by the creditor. In seeking a deficiency judgment the mortgagee must first prove the validity of the foreclosure and sale and that such sale was fairly conducted. Casa Monte Company v. Ward, 342 S.W.2d 812 (Tex.Civ.App., 1961, n. w. h.). The trial court found that the private sale of the personal property conducted on or about the 6th day of December, 1960, was fair, just and equitable. The appellants attack the findings of the trial court and contend

that there was no evidence or insufficient evidence that the purported sale was fairly conducted. We sustain appellants' contention.

 Sales by mortgagees under power given to them are more liable to abuse than judicial sales. They are more zealously watched by our courts of equity and upon slight proof of unfair conduct or violation of the powers given by the instrument, they will be set aside. Eichman v. Highland Park State Bank, 345 S.W.2d 352 (Tex.Civ.App., 1961, wr. ref.); Campbell v. Eastern Seed & Grain Co., 109 S.W. 2d 997 (Tex.Civ.App., 1937, n. w. h.); Associates Investment Company v. Lenz, 288 S.W.2d 857 (Tex.Civ.App., 1956, n. w. h.); Sullivan v. Hardin, supra. The reviewing courts will test the evidence as to the fairness and justness of a non-judicial sale and apply the law as it pertains to the facts in each individual case Appellants complain of the inadequacy of the price obtained at the sale and that no bidders were present. These facts, standing alone, are not sufficient to set aside the sale. Davenport v. San Antonio Machine & Supply Co., 59 S.W.2d 207 (Tex.Civ.App., 1933, wr. ref.).

 Appellants further contend that the sale is void because the appellees did not have the express authority in the mortgage to purchase at the sale. We find no Texas cases on this point and none were cited. It is undisputed that the appellees, through their attorney, sold the property in question to themselves. A mortgagee is a trustee, but in a qualified sense. He does not hold for the benefit of others, but for himself. He is a cestui que trust, as well as trustee. He has an interest in the property. It is pledged expressly to secure his claim; and where he is deprived of the power to purchase, he might suffer great loss by its sale to others at a low price. He has an interest that the bid should amount to his encumbrance, and that the property be not sacrificed, to the injury as well of the mortgagor as the defeat of his own claim; as this may be the only fund for the discharge of his debt. The mortgagee should be entitled to enter into competition at the sale. Howard v. Davis, 6 Tex. 174 (1851). If he sells the property to himself at private sale, he does not divest himself of his fiduciary character. However, where the mortgagee seeks a deficiency judgment and the mortgagee himself purchases without express authority in the mortgage instrument, the sale is voidable in equity for good grounds, though not absolutely void. Casa Monte Company v. Ward, supra; Southern Trust & Mortgage Co. v. Daniel, 143 Tex. 321, 184 S.W.2d 465 (1944). It is his duty to sell at the highest possible price; if he purchases, his interest would be to purchase at the lowest possible price; as seller and purchaser he is charged with the possibility of an adverse interest. In such case the court will examine such sale from its four corners and require the mortgagee to prove by clear and convincing evidence that such sale was fairly and honestly conducted in all respects.

 The evidence was further undisputed, in fact the trial court specifically found, that the sale was conducted without soliciting or inviting bids of any kind or character of any person whomsoever. There was no convincing evidence to show that the sale was conducted where the property was located. The legal duties imposed upon the mortgagee require him to use all fair and reasonable diligence in advising prospective purchasers of a pending foreclosure sale as to its time and place, giving such prospective purchasers an opportunity to inspect the property. The mortgagee should use all reasonable means in obtaining the best prices for the property to be sold upon foreclosure, entertaining a bid of his own as a matter of competition and to prevent loss to himself.

 It is inconceivable to us that a mortgagee without giving notice of the in-

tended sale to any prospective bidder could conduct a sale on his own behalf, selling to himself, without asking for bids or receiving bids, without having the property exhibited, or holding the sale at a location other than where the property was located, possibly in the confines of the mortgagees' attorney's office in another city and county, could, under these circumstances, conduct a fair and impartial sale.

We therefore hold that there was no evidence of a sale fairly conducted and such sale must be set aside.

 It is our opinion, and we so hold, that the action of the mortgagees, by taking and exercising dominion and control over the property without conducting a proper sale, amounted to an illegal conversion of the property. It is only through a valid sale .and foreclosure that the lien for the security is merged into the title to the property or its proceeds. 12 Tex.Jur.2d 107, Chattel Mortgages, § 80.

 Appellants contend that they should have credit for the value of the property at the time that the appellees converted the property to their own use and that we should render judgment as to the value of such property. We hold that there was insufficient evidence of the actual fair market value of the subject property as of the date of its conversion. There being no valid sale and an absence of sufficient evidence as to the value of the property, the trial court and this court had no data from which they could enter a deficiency judgment. Sullivan v. Hardin, supra. A prior valid sale, fairly conducted, or a determination that the property had been converted, and then a finding of the reasonable market value of such property as of the date of its conversion are the conditions precedent to the entry of a proper deficiency judgment.

In view of our holding and because the record shows that the property is no longer in the hands of the appellees on a retrial, the value of the property shall be determined, and the appellants given credit for the reasonable market value of the property as of December 6, 1960, being the time of the appropriation by the appellees. Maupin v. Chaney, 139 Tex. 426, 163 S.W. 2d 380. The trial court in arriving at the reasonable market value of the subject personal property as of December 6, 1960, will consider that there was a first lien chattel mortgage existing against such personal property and at the same time it will likewise consider that the appellees, prior to the conversion of the subject personal property, purchased the real property subject to the same outstanding indebtedness covered by the first lien chattel mortgage on the subject property. If the value of the said property, considered as it was on said date, is found to be less than the debt, then the appellants should be given credit for such value, and appellees a judgment for the remaining deficiency, plus interest and attorney fees.

The costs of this appeal are assessed against the appellees.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

## ON MOTION FOR REHEARING

In reversing and remanding this cause it is not the intention of this Court to hold that appellee, on another trial, may not raise the issue of a valid sale of the personal property, provided that sufficient competent evidence is available to raise such issue. This cause is remanded for a new trial on all issues.

Motion for rehearing is overruled.